# UNITED STATES DISTRICT COURT
# DISTRICT OF MINNESOTA

| | |
|---|---|
| Parkview Homes, LLC, | Case No. 15-cv-3692 (SRN/BRT) |
| Plaintiff, | |
| v. | **ORDER** |
| City of Lexington, | |
| Defendant. | |

Thomas F. DeVincke, Malkerson Gunn Martin LLP, 220 S. 6th St., Ste. 1900, Minneapolis, MN 55402, for Plaintiff.

George C. Hoff and Justin L. Templin, Hoff Barry & Kozar, P.A., 775 Prairie Center Dr., Ste. 160, Eden Prairie, MN 55344, for Defendant.

SUSAN RICHARD NELSON, United States District Judge

This matter is before the Court on Defendant's Motion for Summary Judgment [Doc. No. 27]. For the reasons set forth below, that Motion is granted in part and denied in part.

## I. BACKGROUND

The material facts of this matter are undisputed. Instead, the parties dispute the significance of some facts and which facts are relevant. The Court notes these disputes where necessary to its analysis.

### A. Facts

Plaintiff Parkview Homes, LLC ("Parkview") is a Minnesota limited liability company that is wholly owned by National Loan Acquisitions Company ("NLAC").

(Def's Mem. of Law in Supp. of its Mot. ("Mem. in Supp.") at 2 [Doc. No. 29].)
Parkview owns and operates a manufactured home community located in the City of
Lexington, Minnesota (the "City").  (Compl. at ¶ 3 [Doc. No. 1-1].)

Parkview hopes to adding new manufactured homes to the Community.  Before it
may do so, however, the City must first approve permits for the siting of those homes.
(See Compl. at ¶ 13; Mem. in Supp. at 2.)  Parkview proposed its plan for these new
manufactured homes to the City in 2014 and the parties have disputed that plan ever
since.  In general, Parkview asserts that the City is obstructing the approval of its permit
applications in an attempt "to shut down a manufactured home community in favor of
more desirable economic redevelopment."  (Pl's Mem. in Opp. to Def's Mot. ("Mem. in
Opp.") at 2 [Doc. No. 48]).  In contrast, the City views the Community as a "historically
problematic property" for which Parkview has not presented a sufficiently detailed
renovation and redevelopment plan.  (See Compl., Ex. C ("Ltr. dated 1/9/2015") at 12.[1])

Parkview first proposed adding twenty-eight new manufactured homes to the
Community in the summer of 2014.  (Mem. in Opp. at 3.)  Soon after this initial proposal,
the City informed Parkview that the proposed homes did not meet the building code's
(the "Code") minimum square footage and width requirements and thus the City would
not approve the requested permits.  (Id. at 4.)  In September of 2014, Parkview sent a
letter to the City disputing this assessment.  (Id. at 5.)  Specifically, Parkview claimed

---

[1] The Complaint and its attachments are presented as a single filing.  Thus, unless it
indicated otherwise, the Court cites to the ECF page numbers as they appear in the upper
right hand corner of each document.

that manufactured homes within the Community were exempt from the dimensional requirements of the Code by its own terms.  (Id.)

In October of 2014, the City required that Parkview provide specifications about the proposed homes to the building inspector for review.  (Id. at 6.)  Parkview complied and provided the requested materials.  (Id.)  On January 9, 2015, the City expressed concerns about a number of infrastructure issues in the Community, in particular the water system.  (Id.; see Ltr. dated 1/9/2015.)  The City doubted that Parkview could make the investments required to correct the Community's alleged infrastructure deficiencies.  (Ltr. dated 1/9/2015 at 11–12.)  In light of this doubt, the City threatened condemnation if Parkview did not provide it with certain "planning and performance assurances."  (Id.)

Despite the letter from the City, Parkview again submitted permitting applications for twenty new manufactured homes in July of 2015.  (Mem. in Opp. at 7; Mem. in Supp. at 2.)  Those applications were denied by the City on August 14, 2015.  (Mem. in Supp. at 3; see Compl., Ex. D ("Ltr. dated 8/14/2015") at 13–16.)  The City notified Parkview that it would not approve Parkview's applications until it satisfied six requirements.  (See Ltr. dated 8/14/2015; Mem. in Supp. at 3–4.)  Those six requirements were that Parkview: 1) provide a "comprehensive plan" of its "proposed rehabilitation of the park," including information on lot setbacks and boundaries, construction and utility plans, storm water compliance, disability accessibility, and sewer discharge data; 2) remove structures or units located within the municipal right of way; 3) provide the City with test results on the Community's water delivery and sewer systems, as well as data on the

3

improvements that Parkview made to the water delivery system in 2015; 4) identify abandoned structures, units, and lots; 5) disclose any existing units that were used for business purposes and identify any of the proposed units that would be used in similar ways; and 6) discontinue the use and occupation of a particular home in the Community that was previously cited for Code violations and remove that unit from its present lot. (See Ltr. dated 8/14/2015; Mem. in Supp. at 3–4.)

## B.  Procedural History

Parkview filed suit in state court shortly after receiving the City's August 14, 2015 letter.  (See Compl.)  Parkview's suit presents two counts.  (Id.)  First, Parkview seeks a declaratory judgment that the City's refusal to issue the requested permits—based on its interpretation of the Code—is improper because it conflicts with federal law regarding the requirements for manufactured homes (i.e., that federal law preempts the Code). (Compl. at ¶¶ 7, 16–18.)  Second, Parkview asserts a claim under 42 U.S.C. § 1983 alleging that the City "impermissibly attempted to interfere and actually interfered" with Parkview's property interests in the Community by refusing to issue the requested permits under false pretenses.  (See id. at ¶¶ 19–25.)  Although not specifically stated as a claim, Parkview also alleges that the City's attempts to enforce the Code against the Community would violate Minn. Stat. § 462.357 by altering the Community's existing density.  (Id. at ¶ 9.)  The City removed this case to federal court based on the federal questions raised in Parkview's preemption and § 1983 claims.  (See Not. of Removal [Doc. No. 1-2]; Civ. Cover Sheet [Doc. No. 1-3].)

4

At the November 21, 2016 hearing on the City's Motion for Summary Judgment, Parkview admitted that its § 1983 claim was based on state—not federal—tort and due process law.  In light of this admission and based on the record and briefing, the Court notified the parties that it would grant the Motion with respect to the preemption and § 1983 claims.  However, the Court expressed concern about whether it should exercise pendent jurisdiction and decide any remaining state law claim(s).  The Court agreed to retain jurisdiction over those claims for a limited time to allow the parties to engage in settlement discussions.  However, shortly thereafter, the parties informed the Court that settlement would not be possible.  (See Doc. Nos. 49, 50.)  Thus, as discussed at the hearing on the Motion, the Court issues this Order disposing of this case..

## II.    DISCUSSION

### A.  Legal Standard

Summary judgment is proper if, drawing all reasonable inferences in favor of the non-moving party, there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law.  Fed. R. Civ. P. 56(a); Celotex Corp. v. Catrett, 477 U.S. 317, 322–23 (1986); Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 249–50 (1986); Morriss v. BNSF Ry. Co., 817 F.3d 1104, 1107 (8th Cir. 2016), cert. denied, (U.S. Oct. 3, 2016).  "Summary judgment procedure is properly regarded not as a disfavored procedural shortcut, but rather as an integral part of the Federal Rules as a whole, which are designed 'to secure the just, speedy, and inexpensive determination of every action.'" Celotex, 477 U.S. at 327 (quoting Fed. R. Civ. P. 1).

The party moving for summary judgment bears the burden of showing that the material facts in the case are undisputed.   Id. at 323.   However, a party opposing summary judgment "'may not rest upon the mere allegation or denials of his pleading, but ... must set forth specific facts showing that there is a genuine issue for trial,' and 'must present affirmative evidence in order to defeat a properly supported motion for summary judgment.'"   Ingrassia v. Schafer, 825 F.3d 891, 896 (8th Cir. 2016) (quoting Anderson, 477 U.S. at 256–57). "[T]he nonmoving party must 'do more than simply show that there is some metaphysical doubt as to the material facts.'"   Conseco Life Ins. Co. v. Williams, 620 F.3d 902, 910 (8th Cir. 2010) (quoting Matsushita Elec. Indus. Co., v. Zenith Radio Corp., 475 U.S. 574, 586 (1986)).   Summary judgment is proper where the non-moving party fails "'to make a showing sufficient to establish the existence of an element essential to that party's case ....'"   Walz v. Ameriprise Fin., Inc., 779 F.3d 842, 844 (8th Cir. 2015) (quoting Celotex, 477 U.S. at 322).   While the moving party bears the burden of showing that the facts are undisputed, a judge is not confined to considering only the materials cited by the parties, and "it may consider other materials in the record." Fed. R. Civ. P. 56(c)(3).

**B. Federal Preemption**

Congress may prohibit municipalities from passing ordinances that conflict with federal legislation and regulations by enacting a statute with an express preemption provision.   See Arizona v. United States, 132 S. Ct. 2492, 2500–01 (2012); see U.S. Const., art. VI, cl. 2.   Congress included such a preemption provision in the National

Manufactured Housing Construction and Safety Standards Act of 1974 (the "Act").   42 U.S.C. § 5403(d); see 24 C.F.R. § 3282.11.   That section expressly prohibits states and municipalities from continuing or establishing any standard concerning the "construction or safety" of manufactured homes that deviates from the federally-mandated standards on these issues.   42 U.S.C. § 5403(d); see Lauderbaugh v. Hopewell Twp., 319 F.3d 568, 576 (3d Cir. 2003) ("[T]he [Act] prohibits localities from imposing any safety and construction standard upon manufactured homes that differs from the federal standard."); Texas Manufactured Hous. Ass'n, Inc. v. City of Nederland, 101 F.3d 1095, 1100 (5th Cir. 1996).

The preemptive reach of § 5403(d) is limited to standards and requirements for manufactured homes related to consumer protection.   Georgia Manufactured Housing Ass'n, Inc. v. Spalding County, Georgia, 148 F.3d 1304, 1310 (11th Cir. 1998) ("[T]he construction and safety standards preempted by the Act are those standards that protect consumers from various potential hazards associated with manufactured housing. In contrast, a zoning requirement related to aesthetics is not preempted because the goals and effects of such a standard have nothing to do with consumer protection"); Schanzenbach v. Town of Opal, Wyo., 706 F.3d 1269, 1273 (10th Cir. 2013) ("An examination of the Manufactured Housing Act shows that its core concern is the creation of uniform standards for construction and safety of manufactured housing in the United States, with the resulting reduction in the costs of such homes.").   As a result, local ordinances that do not address consumer protection—such as those aimed at aesthetics

7

and promoting property values—are not preempted by § 5403(d).  <u>Lauderbaugh</u>, 319 F.3d at 578 ("The [Act] preempts only safety and construction standards.  It is focused on consumer protection . . . and does not strip a township of its authority to make land use decisions regarding, for example, aesthetics or property values."); <u>see</u> <u>Georgia Manufactured Hous. Ass'n,</u> , 148 F.3d at 1310 (holding that a 4:12 roof pitch requirement is not preempted because it is an aesthetic condition for placement of manufactured homes).  Similarly, the Act does not preempt local restrictions on the location of manufactured homes, or other restrictions/requirements related to the infrastructure these homes employ (e.g., water, sewer, etc.).  <u>See</u> <u>Lauderbaugh</u>, 319 F.3d at 576 ("[T]he act's aim is to set standards for how manufactured homes will be built; it does not attempt to determine where they will be located.").

Parkview argues that the established case law limiting the scope of preemption under § 5403(d) was rendered obsolete by amendments to the Act in 2000.  (Mem. in Opp. at 13–18.)  Parkview contends that those amendments changed the Act from a consumer protection law into an affordable housing law and broadened the Act's preemption effect accordingly.  (<u>See</u> <u>id.</u>)

In 2000, the American Homeownership and Economic Opportunity Act ("AHEOA") amended § 5403(d) to include the following:

> Federal preemption under this subsection shall be broadly and liberally construed to ensure that disparate State or local requirements or standards do not affect the uniformity and comprehensiveness of the standards promulgated under this section nor the Federal superintendence of the manufactured housing industry as established by this chapter.

8

Furthermore, AHEOA added the following sections to the Act's "Findings and Purposes"

section:

> (a) Findings
> Congress finds that--
>> (1) manufactured housing plays a vital role in meeting the housing needs of the Nation; and
>> (2) manufactured homes provide a significant resource for affordable homeownership and rental housing accessible to all Americans.
>
> (b) Purposes
> The purposes of this chapter are--
>> (1) to protect the quality, durability, safety, and affordability of manufactured homes;
>> (2) to facilitate the availability of affordable manufactured homes and to increase homeownership for all Americans;
>> …
>> (4) to encourage innovative and cost-effective construction techniques for manufactured homes;
>> …
>> (8) to ensure that the public interest in, and need for, affordable manufactured housing is duly considered in all determinations relating to the Federal standards and their enforcement.

42 U.S.C. § 5401.

Parkview maintains that these amendments mean that the Act's preemption

provision now encompasses the City's reasons for denying Parkview's permit

applications. (Mem. in Opp. at 13–18.) Tellingly, however, Parkview does not cite a

single case in support of this theory. Instead, courts that have considered preemption

under the Act since AHEOA's amendments continue to focus on consumer protection.

See, e.g., Schanzenbach, 706 F.3d at 1273 (explaining that "[a]n examination of [the Act]

shows that its core concern is the creation of uniform standards for construction and

safety of manufactured housing in the United States" and that "the preemptive effect of

[the Act] is limited to local laws governing the construction and safety of manufactured homes . . . ."); Lauderbaugh, 319 F.3d at 578 (stating that the Act "preempts only safety and construction standards.  It is focused on consumer protection . . . .") (internal citation omitted).   Moreover, the pre-2000 preemption analysis continues to be cited with approval.  See, e.g., Schanzenbach, 706 F.3d 1269; Lauderbaugh, 319 F.3d 568; Burton v. City of Alexander City, Ala., No. CIV. A.99-D-1233-E, 2001 WL 527415 (M.D. Ala. Mar. 20, 2001), aff'd sub nom., Burton v. City of Alexander, 277 F.3d 1379 (11th Cir. 2001).

As these cases confirm, Congress did not intend for AHEOA to extend preemption to local standards that do not concern safety and construction requirements for manufactured homes.  Burton, 2001 WL 527415 at *9 ("Congress plainly did not intend [in the AHEOA] to preempt zoning laws that operate only where HUD does not.").  Merely including language related to affordable housing in the AHEOA's findings and purpose section does not evidence congressional intent to preempt the well-established zoning authority of municipalities.  See Manufactured Housing Construction and Safety Standards: Notice of Internal Guidance on Preemption, 62 FR 3456-01 ("Federal preemption cannot be based upon a general purpose of the Act . . . .").  This is particularly true since the Act's preemption provision still expressly limits itself to state and local standards "regarding the construction or safety" of manufactured homes.  See 42 U.S.C. § 5403(d).  Thus, in order for the City's restrictions and requirements to be

preempted, they must relate to the construction or safety of the manufactured homes that Parkview intends to add to the Community.

The only specific Code provisions that Parkview identifies as allegedly preempted by § 5403(d) are those setting minimum width and square footage requirements for manufactured homes.[2]  (Mem. in Opp. at 13.)  However, Parkview does not provide any details on why it considers these provisions to be related to construction or safety standards.  These Code provisions are not aimed at consumer protection and are instead more akin to aesthetic restrictions on manufactured housing.  They are therefore not preempted by 42 U.S.C. § 5403(d).

Similarly, none of the City's other requirements that Parkview must meet before it grants the permitting applications—as listed in its August 14, 2015 letter—are intended to regulate the construction or safety of Parkview's proposed manufactured homes. These six requirements primarily concern the location and use of the Community's existing units, as well as the Community's water supply system.  They do not obviously concern the "various potential hazards associated with manufactured housing," see Georgia Manufactured Hous. Ass'n,, 148 F.3d at 1310, and Parkview offers no argument how or why these requirements run contrary to any federal regulation or standard under the Act.  Thus, Parkview's preemption claim fails as a matter of law.

---

[2] In fact, Parkview explicitly states that it "does not and never has argued that all of the City's excuses for denying the Permit Applications are pre-empted."  (Mem. in Opp. at 13 n.4.)

### C. 42 U.S.C. § 1983

Federal law provides a cause of action for the deprivation of any "rights, privileges, or immunities secured by the Constitution and laws" under the color of a state "statute, ordinance, regulation, custom, or usage."  42 U.S.C. § 1983.  At the hearing on the Motion for Summary Judgment, Parkview admitted that any due process claim it had was based on state—not federal—law.  Since § 1983 requires the deprivation of a federally granted right or privilege—and Parkview admits any due process claim it has sounds under state law—Parkview's § 1983 claim fails as a matter of law.

### D. Pendent Jurisdiction

Claims that the City violated state law by requiring that Parkview adjust the Community's existing density and violated Parkview's substantive due process rights by acting in an arbitrary and capricious manner can fairly be read into the Complaint. However, because Parkview's preemption and § 1983 claims fail as a matter of law, the question is whether this Court should exercise pendent jurisdiction (sometimes called "supplemental jurisdiction") over the remaining state law claims.

Federal district courts "have supplemental jurisdiction over all other claims that are so related to claims in the action within [the court's] original jurisdiction that they form part of the same case or controversy . . . ."  28 U.S.C. § 1367(a).  Important here, a court may decline to exercise supplemental jurisdiction where it "has dismissed all claims over which it has original jurisdiction."  28 U.S.C. § 1367(c)(3).  "A district court's decision whether to exercise that jurisdiction after dismissing every claim over which it

had original jurisdiction is purely discretionary." Carlsbad Tech., Inc. v. HIF Bio, Inc.,

556 U.S. 635, 639 (2009).

> The factors a court should consider in determining whether to exercise jurisdiction over pendent state law claims are judicial economy, convenience, fairness, and comity. In the usual case in which all federal-law claims are eliminated before trial, the balance of factors to be considered under the pendent jurisdiction doctrine will point toward declining to exercise jurisdiction over the remaining state-law claims.

Wilson v. Miller, 821 F.3d 963, 970–71 (8th Cir. 2016) (alterations, citations, and

quotations omitted); see United Mine Workers of Am. v. Gibbs, 383 U.S. 715, 726

(1966) ("Certainly, if the federal claims are dismissed before trial, even though not

insubstantial in a jurisdictional sense, the state claims should be dismissed as well.").

As just explained, the Court will dismiss Parkview's preemption and § 1983

claims, which served as the basis for original subject matter jurisdiction. The parties

presented no briefing on whether this Court should exercise supplemental jurisdiction

over Parkview's remaining state law claims.[3] The substance of the remaining state law

claims was minimally addressed in the parties' briefing and there is no indication that the

parties expended considerable time or resources exploring them during discovery. These

claims were not even explicitly set forth in Parkview's Complaint. Given that these

claims deal solely with matters of state law, the Court is convinced that they would be

best addressed in state court. In short, the Court finds no compelling reason why it

---

[3] At the hearing on the Motion for Summary Judgment, the City expressed its preference that this Court rule on all of Parkview's claims, but when pressed on why exercising supplemental jurisdiction over the remaining state law claims was appropriate, the City could not articulate a compelling reason and ultimately acquiesced to those claims being dismissed without prejudice if they were not settled. (See Doc. No. 49 at 2.)

should exercise supplemental jurisdiction over Parkview's remaining state law claims and thus declines to do so.

## III.   ORDER

Based on the foregoing, and all the files, records, and proceedings herein, **IT IS HEREBY ORDERED THAT:**

1. Defendant's Motion for Summary Judgment [Doc. No. 27] is **GRANTED IN PART AND DENIED IN PART** as follows:

   a. Plaintiff's federal preemption and 42 U.S.C. § 1983 claims are **DISMISSED WITH PREJUDICE**;

   b. Plaintiff's state law claims are **DISMISSED WITHOUT PREJUDICE**.

**LET JUDGMENT BE ENTERED ACCORDINGLY.**


Dated: February 27, 2017                    s/ Susan Richard Nelson
                                            SUSAN RICHARD NELSON
                                            United States District Judge

14